Case number 16-5101 et al., United States of America, United States Department of Justice et al. v. Philip Morris USA Inc. Formerly known as Philip Morris Incorporated et al. Appellants, Brown & Williamson Tobacco Corporation, directly and as successor by merger to American Tobacco Company et al. Mr. Carvin for Appellant, Philip Morris USA Inc. Ms. Patterson for Appley USA. Mr. Glinstenstein for Appley's Tobacco-Free Kids Action Fund et al. Good morning, Your Honors. Michael Carvin for the Appellant Manufacturers. I've reserved two minutes for rebuttal. At the end of this journey, the disagreement with the government is more narrow than when we began, but it's still quite important, and we think that the District Court's error is straightforward. In the corrective statements case, this Court ruled that the preamble can't say deceived, and now the only question is whether it can clearly imply that we deceived the public in the past. We think that's the clear implication of the preamble at this point. Suppose it just said by court order. If it just said by court order? This is the truth. I think obviously in conjunction it creates a worse implication because federal courts don't order you to tell the truth unless they've found that you've told falsehoods in the past. We have the word order. I'm wondering if the prior holdings concerning RICO relief not being backward-looking mean we have to totally ignore the existence of the past when we craft forward-looking remedies. I think that was the essential teaching of corrective statements, Your Honor. After all, it was backward-looking in terms of our prior conduct, and therefore it did not prevent and restrain, and that was the clear holding of corrective statements, even assuming that it prevented consumer deception. In addition to the fact that it's backward-looking and violates RICO for that reason, the other point I'd like to make is their formulation violates the First Amendment because it doesn't do any good in terms of preventing and restraining. In other words, even if it doesn't do the RICO harm, it also doesn't do a positive good. So you would say that we simply have to strike both of the preambular phrases? Yes. The remedy we're seeking is obviously to – the truth is you could have no preamble other than identifying the defendants because as this Court held in corrective statements, the preambles really don't do anything. What does something in terms of preventing and restraining is the bullet points, the speech about the products. This has nothing to do with the health or not of cigarettes. It has to do with characterizing the bullet points that are about to come, and the key point is under NAM they cannot prove that their formulation is more effective in accomplishing prevent and restrain, and they certainly can't show that it's more effective than our alternative. Could we just order the striking of the preambular phrases and otherwise affirm in part and send this back for the world to go on instead of having to have more hearings? Yes, I'm sure this Court is tired of all these appeals, and obviously you could just strike the phrases we want. It seems to me at that point you've got two options. It's just to say no reference in the preamble except to the defendants' names or adopt our less intrusive alternative. But I don't think we want to go back and start from scratch all over again. I think we can get out of this. The point I was trying to make about NAM was it clearly held that the government doesn't get to get its preferred form of speech. It's our speech. They need to show that their formulation accomplishes something that ours does not, and they can't do it here for two reasons. One is they never tried to prove effectiveness in any way. The district court rejected the expert report that purported to do that, and again the essential teaching of corrective statements was, look, the preambles have nothing to do with preventing and restraining because they have nothing to do with telling you about the health effect of cigarettes. And the idea of prevent and restrain is we can't say they're unhealthy on Monday and then turn around and say they're healthy on Tuesday, and the preambles really don't bring anything to the table in that regard. Is there any evidence, and this strikes me as an evidentiary question rather than a question of law. You read it one way, somebody else reads it another way. Were there any focus groups that were polled to determine how the average person would view the preamble? No, that's an essential point, Judge Randolph. They did a 500-page expert report where they did that kind of thing, which they claimed to show that their formulations were more effective in preventing consumer deception. But if you look at footnote 15 of the district court's order, she made it quite clear she didn't pay any attention to that expert report, mainly because she didn't want to give us a chance to respond to it or introduce our own expert report. So she affirmatively eschewed any evidence in terms of which of these is more effective. And as I say, wholly apart from exceeding RICO, that means that this violates the First Amendment because this court held quite clearly in NAM that you need to show that your formulation, that is the government's formulation, is more effective than the speaker's preferred speech, particularly if the speaker's speech is less effective. Yeah, but we're not talking about effectiveness now. What we're talking about is whether the combination of the here is the truth and by court order, et cetera, would be taken by someone reading that to mean that the tobacco companies had not been telling the truth. No, fair enough. There's two points, and I want to make sure I'm separating them. That's the violation of RICO is the question that you just focused on, which is does it imply prior wrongdoing. I think there's no evidence on this one way or another. There's no surveys. I think common sense tells you that it's obvious that a federal court doesn't tell you to tell the truth today if they hadn't found yesterday that you had told falsehoods. And the other point. Hold on just a moment. Suppose we omit the phrase, though, this is the truth. We just state it by court order. Is that necessarily saying you've committed falsehoods in the past or wouldn't it be equally consistent with you just hadn't said anything in the past? I think that that formulation is less troublesome than. The first time the government ordered you to put forth the, not the courts, the first time the government ordered tobacco companies to put the warnings on cigarettes, they were not saying that they had at that point established that there had been deception, although I'm sure they suspected it, but all they were doing was adding some language that hadn't been used before. Well, wouldn't that be equally consistent with the court order phrase? Well, again, you'd have to ask yourself two questions. One is why are they saying the court ordered us to do anything? I asked myself, why are you getting me back up here with this? Somebody else might ask themselves what you're coming up with. Then that's a fair question, Your Honor. We went through mediation. We bent over backwards to create the kind of language that you're talking about. If they thought that a federal court order lent some imprimatur to what followed, we gave them that. We said a federal court thinks you should know it and that under court order this was paid for by a defendant. So we went the extra mile to see if we could accommodate whatever reasonable concerns they had. The reason they continue to disagree with us is because our language does not, as their language does, imply prior wrongdoing, and the point I was making in terms of NAM is if you don't see any perceived difference between your revision to Judge Kessler's language and ours, ours wins because it's our speech under Hurley. As NAM made clear, we get to tailor our speech to what we want to say. If they think they've got some reason to alter the speech, then and only then, if they've proven it, can you order us to speak their language. If it's a draw, then we would win. And I think in that regard it's important to emphasize that this is a narrow tailoring case. They need to show evidence that our less restrictive alternative does not work, and I can only point you to the 2009 opinion, which they say is controlling, and I think it's very helpful to look at page 1143 of that opinion, which after citing Zauderer and Central Hudson says the following. There's different formulations, but the Supreme Court's bottom line is clear. The government must affirmatively demonstrate its means are narrowly tailored to achieve a substantial government interest. So they were clearly applying Central Hudson narrow tailoring. This court in the graphic warnings case involving the FDA said that that's exactly what was the rule that was applied in the 2009 opinion, and that is what they are following here. Also, again, under NAM made it clear that Central Hudson applies outside the context of disclaimers on voluntary ads. That's the only place that AMI and Zauderer applies, and that's, of course, true because if they are compelling you to speak as opposed to compelling you to add a disclaimer to your own voluntary advertisement, then we always use Central Hudson. That was the rule in Novartis. That was the rule in Warner-Lambert, and, of course, United Foods, which purely involved compelled speech, commercial speech about advertisements for mushrooms, said it was judged by strict scrutiny. So we think it's quite clear under both the law of this case and the law of this circuit that Central Hudson narrow tailoring is the governance standard to be applied here. So what would you say, and I know it's in here, but remind me, what you're accepting as being a lawful phrasing for the warnings? Yeah, to be precise, the preamble would say a federal court has determined that you should know the following about these topics, and then there's a footer at the end which says under court order paid for by defendants. That's quoted on page 18 of our brief. I've run out of time unless there are further questions. All right. Thank you. May it please the Court. Melissa Patterson for the United States. I think it's helpful to review what happened after this Court's last opinion in 2015. The same statements that had been before this Court last time went back to the district court, and the district court refused to return to the drawing board and start all over again because she said that would be a waste of time and it would be ridiculous. She said, I'm going to look at this Court's 2015 opinion, determine what parts of this language is problematic under this Court's 2015 opinion, and redline it. And that's exactly what the district court did. So the language that's before this Court today is language that defendants have had a chance to fully and fairly challenge before, and the only question remaining for this Court, the only legitimate fodder for appeal at this stage in the litigation, is the phrase, here is the truth, those four words. Defendants did challenge them last time, and this Court did not explicitly address them in its 2015 opinion. However, the reasoning of this Court's opinion, we think in two respects, makes clear that that was a permissible formulation for the district court to leave in. And those two reasons are this Court identified deceptive conduct and the references that the preambles used to contain about their deceptive conduct as beyond the scope of what the district court was allowed to do, and it emphasized, and this is key, that the statements were not supposed to be focused on consumers. They were supposed to be focused on preventing and restraining these defendants from again committing the particular types of RICO violations they committed in past. And so by labeling the bullet point statements, which we know are all factual, we know are all supported by the record, as the truth, this is a remedy precisely aimed at these defendants because the hallmark... What is the phrase, here is the truth? What function does that serve? I think it's a preventing and restraining function, Your Honor, because the way the fraud here unfolded was that defendants would take public health facts that were out there in the Surgeon General reports, in other government reports, and so doubt about them. This was the open question strategy. So you had, for example, publications by defendants called Children in Smoking, The Balanced View. And it would say, well, it's not conclusive that smoking during pregnancy is harmful to the baby. It's not conclusive that secondhand smoke. We need more studies. And so when you have a demonstrated history of RICO violations that take public health facts and try to sow doubt about them, try to muddy them up, requiring defendants to put public health facts out there, unambiguously labeling these ones, these facts are the truth, is a very narrowly, precisely tailored remedy to prevent them, as we know they are likely to do, to go out and in other statements, try to undermine the public health facts that are contained in the bullet points. But wouldn't, you know, accepting all that, if it simply said a federal court has ordered our company to make the following statements and then list the statements, the bullet points, I don't see why anybody could take that as other than accurate. Well, Your Honor, I'm not sure why anybody could take the Surgeon General's repeated reports and warnings as anything other than accurate. But the district court found that these defendants engaged in a sophisticated and creative conspiracy to undermine things that had a strong and perimeter of truth before. You had the EPA. You had the Surgeon General. You had public health groups putting facts out there before. And remember, what we're trying to do is to prevent and restrain these particular defendants from committing their particular flavor of RICO violations again. And where you have this demonstrated history where they take public health facts and they try to undermine them, they try to undercut them, they try to say, don't worry, we've got to do more research, we've got to get more facts. I think the district court, when she said, all I'm doing, I'm not talking about your conduct, all I'm doing is saying you must say that these are, in fact, facts. These are the truth. Now, I want to make clear we're not trying to sort of sneak in any inferences about conduct. If there were some formulation that this court identified that served that same function of preventing and restraining the defendants from in future trying to muddy up. Excuse me. If the here is the truth is excised, well, forget that for a moment. The preamble says that the federal court has ordered us to make the following statement. Here is the truth. That's part of the following statement. The federal court has ordered us to say here is the truth. And then all the bullet points. What is to prevent a company if they have evidence to say, even though the federal court ordered us to say that, it's scientifically inconclusive? Your Honor, it is possible they would try to do that. But this court's insight in 2009, the basis on which this court upheld the corrective statements remedy was that it would make it harder for them to talk out of both sides of their mouth if they had to put out there in public the truth. It would make it harder for them to simultaneously try to undertake. The way it's phrased, it's the court has ordered them to say here is the truth. Yes, Your Honor, and that is by their own request. They would like these statements labeled as being made under court order. And we, of course, are not contesting that. What does that second preambular phrase about here is the truth, what's the value of it? Of here is the truth, Your Honor? Yes. By labeling the facts as the truth, as facts, it makes it harder for them to come in later and try to sow doubt. That was the hallmark of their fraud. You take things, it's not that these are unknown facts. I'm hearing you talk past each other, but I thought that Randolph was saying, asking you why they couldn't make exactly the same statement. The court told us we had to say that, but it's not established. I'm not sure I see why the government, not sure I see why anybody is fighting this hard over these phrases, but I'm not sure I see why the government is. What does it really matter whether it has that second preambular phrase in there or not? Again, Your Honor, we think the district court was well within the bounds of its discretion to simply say I just want you to label these as facts. We're not wedded to this particular formulation. If there is something that this court wanted to identify as serving the same restraining function using different words, we would appreciate clarity from this court. We think the reasoning of the 2015 appeal makes it clear that what we can't refer to in the preambles is deceptive conduct. Again, we had a fight about that in district court. The district court ultimately sided with us. The district court at this point has twice attempted to comply with this court's instructions. So at this point, to prevent further litigation about four words or two words or one word or something else, we would appreciate if this court, if it found in any respect that these preambles needed to be modified, if it could identify an acceptable alternative. Now, we don't think that's necessary, but if the court disagrees, we do ask for clarity. Yeah, truth is not a scientific term, is it? I suppose one could have a metaphysical debate about that, but I think the clear... Yeah, it's either it hasn't been falsified. You have the hypothesis, the whole Karl Popper theory. But truth is not something that you see in any scientific studies. So an alternative is to simply say that it has been shown scientifically and then point, point, point, point, point. Again, Your Honor, we're not wedded to a particular formulation. I think the district court chose this one because it had been before this court before, and this court had not identified any problem with it. In the district court, as an alternative, the government proposed, here are the facts. So it's not that we think these words are somehow magical, but we do think they're serving an important function here, and that it will make it harder for them to say on Tuesday, they're not true. If they've had a say on Monday, these are true, or these are the facts, or the things in the bullet point, those are the real deal, whatever we may come in and try to say later. I see I'm out of time. If the court has no further questions, we ask that this court affirm. Thank you. Good morning. To start off with Judge Randolph's last question, I think the reason why the district court, who of course has lived with this case for many years now and made innumerable findings of fact and has had many opportunities to try to address the corrective statements issue, used the phrase, this is the truth, is because in the court's initial opinion affirming the corrective statements remedy, that is the word that this court used on several occasions. The court specifically said that a corrective statements remedy, which is designed to prevent and restrain RICO violations by preventing the tobacco companies from denying the truth about the impact of their products, would be an appropriate remedy. So I don't think it's something the district court came up with on her own. She came up with that because she saw the district court's ruling as authorizing language like that. Now, having said that, again, there could be somewhat different formulations, but I think it's important also to recognize that the tobacco companies are not disputing at this stage that the actual statements that they're asked to label the truth are in fact the truth or using phraseology from First Amendment precedent are accurate and non-controversial, factual and non-controversial. If you look at their own proposal, which is at pages 640 through 641, beginning before they get to the statements, they say point blank, the following statements are consistent with the D.C. Circuit's decisions, this court's decisions, regarding the restrictions that RICO and the First Amendment impose on the statements text. So they are admitting point blank that these, in fact, are factually accurate and factual and non-controversial. So if they're acknowledging that and simply having a statement that says beforehand, this is the truth, means that you would have to find that their problem is that statements which are the truth cannot simply be labeled the truth. And I would respectfully submit that that can't be a principle that makes any sense from the standpoint of RICO or First Amendment. The other point I would just make very quickly is Mr. Carvin's test is what would be implied. Well, again, if you look at their statement, the footer on their statement says, under court order paid for by Philip Morris, etc. This is at page 640. At the beginning it says a federal court has determined. Now, there could be all kinds of ways that one could imply things about those kinds of statements. Why would anybody be ordered to say something that a federal court has determined or paid under court order? So I respectfully suggest that the standard cannot be what could someone imply. The question is whether this statement, in fact, satisfies the court's RICO and First Amendment principles, which we suggest that it clearly does, in light of what this court itself has said. It removed the language the district court did. It specifically referred to any kind of backward-looking behavior. It formulates these statements in a way that the public would better understand. The interveners respectfully submit that after many, many years, we have reached a point where there has to be some finality. One point I was just making, closing, the district court's order providing for these corrective statements initially required that they could be out in February 2007. So it's literally a decade since this remedy, which was upheld in principle by this court in 2009, was endorsed. I just echo what the Justice Department said. We want a finality. We think that it is appropriate under the circumstances to affirm this particular formulation. But in any event, we respectfully suggest that time has come for this remedy that this court has endorsed in principle before. Did the district court stay its order? Excuse me, Your Honor? Did the district court stay its order? The way in which the parties agreed that the corrective statements would not go into effect until after all appeals had run. That was obviously to give the courts an opportunity. We recognized that there were important issues that were raised under RICO and the First Amendment. The tobacco companies had every right to pursue their appeals. This is the third bite at the apple on these corrective statements. We think the time has come for these to be put into effect. I guess I should have asked Ms. Patterson this, but I'm curious whether you agree with Mr. Carvin that if the statements could be said to be the tobacco companies' statements could be said to be more effective, or if they are equally effective, I suppose, that they win. I don't think that's really the test. Actually, either under Central Hudson, from a First Amendment standpoint, or Zouder, Zouder actually point blank says, well, the fact that one might be able to formulate alternative approaches is not a basis to find that these are violative of the First Amendment. And I think Central Hudson, even if you analyze it under that, requires that there be a substantial interest in those particular formulations the district court came up with. So I don't think this is a situation where you look at theirs as, quite frankly, the entities that were found to be in violation of RICO and say they prefer theirs, and therefore that should get any kind of presumption. I think, if anything, Your Honor, the presumption should go to the district court, who made the original factual findings in the 2012 ruling that Your Honor authored, declining to declare the whole remedial issue moot on the grounds of the Tobacco Control Act, stressed that this is a court who has lived with this case literally for more than a decade and was in a position to evaluate what kinds of statements would be most consistent with the First Amendment and with RICO, and these are the statements that she formulated. So I think the question is do they, in fact, violate the First Amendment or RICO principles, not is there some reason to why the tobacco companies might prefer theirs. I do think it's important, Your Honor, in that respect that they have not disputed that preambles can be incorporated. They could have come to this court and said no preambles, that's completely out of bounds after the court's 2009 ruling. They haven't taken that position. They've not only put in preambles, they put in this footer referring to under court order paid for. So I think they're way down the road of acknowledging that these kinds of statements are appropriate. They simply don't like the ones the district court came up with, and I respectfully suggest that is not the standard that this court should apply in determining whether the district court abused her discretion. What's your answer to that? I asked earlier, it seems to me that this is an argument about what effect this language will have on the reader and not whether lawyers can parse the language and come up with different interpretations and so on and so forth, and the reader is not going to be engaging in a legal analysis when they read it, but there's no, I don't think Judge Kessler didn't allow the record to be reopened on remand from us, did she? Well, she decided she did not need to have a new evidentiary proceeding. She regarded this court's ruling as, as the court itself said, largely upholding the corrective statements and getting rid of the language that she thought the court found problematic. What I would say, Your Honor, in response is, in some ways, I think, looking at the reader's reaction and doing some big proceeding on that, which I think all parties hopefully would agree would just prolong this even further, is not necessary for the following reason. What this court stressed in 2009 and 2015 in the corrective statements opinion is the focus is not on the consumers and whether this would help address consumer deception. In fact, the court said that can't be the focus. The focus is on restraining the violator, and we think what the district court applied was an extraordinarily sort of basic common sense principle that if the violator has to say this is the truth, it will have a tendency to restrain and prevent the violator from saying in the future this is not the truth. And so I don't think you need a big focus group to analyze it from that vantage point. In fact, ironically, it seems to me it's the tobacco company's position that goes down the road that this court says you can't go down by focusing on how will people react, what will they think, what will they imply. You can get rid of all of that by looking at this court's past decisions and saying what will help restrain the violator, and it will restrain the violator by them having to say this is the truth. And so I think that was the district court's approach, and that makes perfect sense as far as the public health interveners are concerned. Thank you. Just to briefly respond to a few of the judges' questions, Judge Randolph, we don't need evidence on how somebody will interpret this because they are not defending, if you say ordered followed by the truth, that that clearly implies prior wrongdoing. That's why they're so insistent in focusing on here is the truth in isolation and decoupling it from ordered. Indeed, in Joint Appendix 612, they concede below that ordered to tell the truth does reflect prior conduct. So that's basically undisputed. If we want to look at here is the truth in isolation, in addition to the points I previously made, under Zauderer, even Zauderer, the statement needs to be purely factual. The notion that here is the truth is a factual assertion is obviously wrong. It's at least partially an opinion. It's a characterization of what is to follow. So under Zauderer, even if here is the truth did serve some prevent and restrain purpose, it's violative of the First Amendment because it's- If we did strike that phrase, the rest of the language you still object to because of the preamble of your phrase? Right. And look, they've come up here and told you, look, there's not a dime's worth of difference between what we proposed and at least if you strike it, here is the truth. If that's true, then to answer Judge Rodgers' round question, it's our speech. We get to use our speech. If they can't say that there's any difference between the two- Well, it's not just your speech at this point. However we phrase this, however the preamble or the lead-in is phrased, it's saying now that it's court-ordered. It's not just your speech. Right, but it's putting it in our mouths, and it is compelling us to make these speeches. And I agree that the prior cases have said you can put- The compelled speech inherently is not going to be the pure speech that Hudson would imply would be the norm in commercial speech. This is compelled speech. It is. We're past that barrier. No, fair enough. You can compel us to speak under the First Amendment. The question is whether you can compel us to speak in the way that they want or in something that's its functional equivalent. And the essential teaching of NAM in a compelled speech context was if conflict minerals doesn't bring anything to the table, that they haven't shown is more effective than a less restrictive, less pejorative term, then you can't force that form of compelled speech on the speaker. NAM was Monte Rico relief. No, no, fair enough, but it was the government telling you. It was the United States Congress- Putting out notice about whether they even could put out notice about the metal source. Fair enough. And the only point I'm trying to make here is it's an entirely different context, but nonetheless you look behind a congressional finding, not some inkling by a district court judge, that this was important language to reduce tensions in the Congo. And if that's true, then you need to look behind this formulation and say, does the district court and the government's preferred formulation really accomplish anything that ours- What do you say to what the intervener stressed, though, that the goal here is not simply to prevent the consumer being deceived, it's to prevent the defendant from continuing in Rico-violative conduct? Right, and there's no evidence that their formulation will do that better. And the common sense response is the one I think that Judge Randolph alluded to earlier. If you say a federal court ordered me to do something, to say something, you're distancing yourself from that language. If your doctor said, the FDA has ordered me to tell you that all forms of secondhand smoke are harmful, you would say, well, what's your opinion? Tell me the real truth. So by definition, if you're trying to accomplish something to prevent us from restraining something from saying tomorrow, this federal court ordered language hurts that effort, it does not help. Unless there are further questions. Thank you.
judges: Brown, Sentelle, Randolph